1

1  UNITED STATES DISTRICT COURT.

2  EASTERN DISTRICT OF NEW YORK

3  - - - - - - - - - - - - - - - X

4  UNITED STATES OF AMERICA,    :
                                           04-CR-159
5         -against-                United States Courthouse

6                                :   Brooklyn, New York

7  VLAD GOLDENBERG
              Defendant.
8                                :   January 26, 2007
                                     Three o'clock p.m.
9  - - - - - - - - - - - - - - - X

10    TRANSCRIPT OF BAIL REVOCATION HEARING
      BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
11    UNITED STATES DISTRICT JUDGE

12    ATTORNEYS FOR GOVERNMENT:
      UNITED STATES ATTORNEY
13    BY:  MICHAEL ASARO
      Assistant United States Attorney
14    271 Cadman Plaza East
      Brooklyn, New York 11201
15
      ATTORNEY FOR DEFENDANT:
16    BOBBI STERNHEIM ESQ.

17

18

19    Court Reporter:
      Marsha Diamond
20    225 Cadman Plaza East
      Brooklyn, New York
21    TEL: (718) 613-2489
      FAX: (718) 613-2369
22
          Proceedings recorded by mechanical stenography,
23    transcript produced by CAT.

24

25

*MARSHA DIAMOND, CSR*
*OFFICIAL COURT REPORTER*

2

1         THE CLERK: Criminal cause for bail revocation
2 hearing: United States versus Vlad Goldenberg.
3         Docket No. CR-0415.
4         MR. ASARO: Michael Asaro for the United States.
5         MS. STERNHEIM: Bobbi Sternheim. Good afternoon.
6         THE COURT: Good afternoon.
7         MR. ASARO: We are here for a bail revocation. What
8 led us here is shortly after the last court appearance where
9 we couldn't go forward with sentencing but discussed -- the
10 government discussed the fact that we have a guideline
11 estimate of 97 to 121 months and have briefed that, shortly
12 after that I got a call from Mr. Goldenberg's wife. I called
13 her back with the case agent and she informed us of a couple
14 of things that now makes us very concerned that he may be a
15 renewed risk of flight. One is one of the two properties that
16 were put up went into foreclosure and nobody thought to let
17 the government or the Court know. That's the first I heard of
18 it. The other issue is now Mr. Goldenberg's father-in-law
19 wants to remove the other, perhaps, from the bond. So
20 essentially there's going to be no security. A big portion of
21 the security dissipated right under our noses. So I think, you
22 know, with the amount of time Mr. Goldenberg is facing, there
23 is still this deportation out there. At the end of the
24 lengthy jail sentence there is a good possibility he is going
25 to be deported to a country that, frankly, he has not been in

for most of his life.  You know, I don't know whether that will ultimately happen but it is a danger.  Whether it is fair or not, we have no control over that.  So he's got a lot of incentive to flee at this point, and frankly, he's looking at serious jail time.  I think he is likely to get some serious jail time.  Any time that he serves now he will get credit for toward his ultimate sentence.  I think it is time to put him in.

MR. STERNHEIM:  Your Honor, I had spoken to Mr. Asaro and requested the opportunity to put forth other sureters who would put -- substitute amount of equity, satisfy the two properties that are in issue. I will ask for a little bit of time to do that, and upon that release, the other properties that Mr. Dynov (ph) has requested be released, it seems to me, there would be no prejudice to the government if there's an equal substitution made. Mr. Goldenberg has been compliant with pretrial.  He has shown up to the Court, as he's required.  He has called my office, as I have requested. He has two small children who are right outside the courtroom, he has a wife, he has family, he has no place to go.  He came here as a little boy from the Ukraine and although there is an issue about his citizenship, that is going to be a litigated issue as to whether this is -- the country is going to send him back to part of a country that no longer exists. He has never demonstrated anything that, to my knowledge, establishes

```
 1  evidence of any risk of flight, and I would ask Your Honor to
 2  just give us a brief grace period to see if we can satisfy the
 3  situation so that it remains whole, to give the government
 4  whatever comfort it feels it needs.
 5            MR. ASARO:  May I just respond briefly, Judge?  I
 6  think we have a couple of issues with that.  One is there's
 7  been no proffer even what the game plan is, what other
 8  property he's talking about is, he's thinking about, so we can
 9  have an idea about a prospect of that really happening.  His
10  history is not completely unblemished.  I think it is a big
11  problem that one of the two properties -- major piece of his
12  bond went to foreclosure and he knew about it, and nobody
13  tells the government or the Court?  You know, I think that,
14  any representations he makes about what he's going to do to
15  secure the bond is definitely suspect given that.
16            MR. STERNHEIM:  The other alternative, and I believe
17  it might be a little late in the day, being that it is Friday,
18  to put Mr. Goldenberg back on electronic monitoring.  If that
19  is something that gives comfort to the government, and the
20  Court feels it is appropriate, he is available for that as
21  well.
22            MR. ASARO:  Electronic monitoring, Judge, you know,
23  it's better than not having it, but certainly, you know, how
24  -- I think from your experience, Your Honor, how effective
25  that really is keeping somebody from fleeing.
```

1    THE COURT: Where does Mr. Goldenberg live?

2    MR. STERNHEIM: He lives in New Jersey with his wife

3 and his two young children. There is no indication that he is

4 going to abandon his responsibilities to those people.

5    THE COURT: What kind of assets do you think would --

6 what's the value of the assets that were pledged?

7    MR. ASARO: At the time it was, approximately,

8 $2,000,000 in equity. I have no idea, you know, now with that

9 one property in foreclosure where we are or how close the

10 other one --

11    THE COURT: Whose property is that?

12    MR. ASARO: I also don't know.

13    (Mr. Sternheim, and the defendant conferred)

14    MR. STERNHEIM: I believe it is the East 27th Street

15 property. The East 65th Street property, I believe, is the

16 residence of the Dynovs.

17    THE COURT: Whose property is the East 27th Street?

18    MR. STERNHEIM: They all are Mr. Dynov's

19 properties. Your Honor. I would also note that confession of

20 judgment has been filed for the sum of $2,000,000. It is not

21 as if it is totally an unsecured bond for the government. I

22 can pass up a copy, if the Court wishes to see it, the filed

23 confession. Just looking for the stamp.

24    THE COURT: Now, correct me if I'm wrong, that the

25 federal government would be in line after the first mortgagee?

1      MR. ANSARO:  I think that is right, Judge.

2      THE COURT:  In other words, the first mortgagee has

3 a priority, so whatever's left over should the home, building

4 or property be foreclosed upon, the Court would be second in

5 line?

6      MR. ANSARO:  That's right, Judge.

7      THE COURT: No higher than second in line?

8      MR. STERNHEIM:  That would be my understanding,

9 Judge.

10     THE COURT:  Do we know what the current --

11     MR. STERNHEIM:  Amount of foreclosure?

12     THE COURT:  Yes.

13     MR. STERNHEIM:  If we can just check.

14     (Pause in the proceeding)

15     Your Honor, it's -- I misspoke -- it is the 65th

16 Street property in foreclosure in the amount 26 or $27,000.

17     THE COURT:  Do we know what the --

18     MR. STERNHEIM:  The equity in the home is over a

19 million dollars, I was told.

20     THE COURT:  How could -- it is counter-intuitive

21 that a million dollar property is in foreclosure over a debt

22 of $27,000.

23     MS. STERNHEIM: If you don't pay your mortgage you

24 don't pay your mortgage, I suppose. It doesn't have to do with

25 the equity in the house when the bank forecloses.

1    THE COURT: Yes, but you got a million dollars of
2 equity, you are going to go out there and refinance or sell
3 before you lose your property, aren't you?
4    MR. STERNHEIM: Well, one would say, yes, but if you
5 are already in debt it is hard to refinance, and it becomes a
6 catch 22, so a lien gets posted against the property for that
7 amount.
8    THE COURT: Well, there must be some paperwork on
9 this foreclosure proceeding. We need to see that.
10    MR. ASARO: I don't have it now, Judge.
11    THE COURT: No, no, I am not putting the burden on
12 you.
13    MR. ASARO: Okay.
14    THE COURT: I am putting the burden on the defense.
15    MR. STERNHEIM: I don't have that. I will get it.
16    THE COURT: Would you please get it?
17    MR. STERNHEIM: Absolutely.
18    THE COURT: So that I know, and if you've got an
19 appraisal on the house I need that, too.
20    MR. STERNHEIM: Certainly.
21    THE COURT: To show what the balance is that would
22 secure his return to the Court every time.
23    MR. STERNHEIM: But the issue, notwithstanding that,
24 Your Honor, is Mr. Dynov wants his properties released, so
25 that's the second issue.

1        THE COURT:  I have not released them yet.
2        MS. STERNHIEM: No, I know that.
3        THE COURT:  How much time do you need to find such
4   substitute collateral?
5        MR. STERNHEIM:  If I could have until next Friday?
6        THE COURT:  I'm not releasing anything at this
7   point.  I do think Mr. Dynov is entitled, if he wishes, to
8   withdraw his properties.  They're his properties.
9        MR. ASARO:  I think he is in court today, Judge.
10       THE COURT:  Mr. Yakov (ph) Dynov, you want to come
11  forward.
12       MR. YAKOV DYNOV:  Yes, Your Honor.
13       THE COURT:  State your names.
14       MR. YAKOV DYNOV: Yakov Dynov.
15       MS INNESSA (ph)DYNOV: Ms. Inessa Dynov.
16       THE COURT:  Mr. Dynov, what is your position about
17  these properties that you pledged?
18       MR. DYNOV:   I tell you my residential problems what
19  I am living, it is going foreclosure because my son-in-law
20  never paid the mortgage what it took a loan for him the second
21  time already.
22       THE COURT:  Your son-in-law?
23       MR. DYNOV:   He is.  He is supposed to pay the
24  mortgage.
25       THE COURT:  This is the son-in-law who is not here?

```
 1              THE DEFENDANT:  They are talking about me.
 2              THE COURT:  You are the son-in-law?
 3              MR. DYNOV: Yes, it's only one.
 4              THE COURT:  You are the son-in-law.  I didn't know.
 5              MR. DYNOV: I'm sorry.
 6              THE COURT:  That's all right.
 7              MR. DYNOV:  And from June or July he didn't pay the
 8  mortgage $4100, and the house going foreclosure very soon.
 9              THE COURT:  How much is the amount borrowed for the
10  house?
11              MR. DYNOV:  I took it, like, 500,000 and 15,000 is
12  closing fee.
13              THE COURT:  When did you take this mortgage?
14              MR. DYNOV: A year ago.
15              MR. ASARO:  There's a point, Judge, where we allowed
16  one of the properties -- and I am not sure which one off the
17  top of my head -- to be released temporarily so they can
18  refinanced.
19              MS. INNESSA DYNOV:  It is the other one.
20              MR. DYNOV:  It is the second one.
21              MS. INNESSA:  Because 27 I pay myself.  It never
22  going foreclosure, but 65th took a loan for the business which
23  he supposed to pay and he never paid.  It is now going be
24  foreclosure.
25              THE COURT:  Which house is going to foreclosure?
```

1        MS. INESSA DYNOV:    65th Street.

2        THE COURT: So 2553 EAST 65th Street.

3        MS. INESSA DYNOV:   Yes.

4        THE COURT:   The value of the house is million
5   dollars.

6        MR. DYNOV:   Almost million, more or less, it like.

7        THE COURT:   And the amount of the current mortgage
8   is half a million dollars?

9        MR. DYNOV:   Yes, it is like 550 with the
10  foreclosure maybe, clerk fee, lawyers' fee.

11       THE COURT:   So there is $450,00 of equity in the
12  house after foreclosure?

13       MR. ASARO:   That sounds right, Judge.

14       THE COURT:   Assuming that they get a million dollars
15  for that house after foreclosure when it goes to sale. So that
16  means that the value of the house has been halved, and where
17  did the other half million dollars go that was the subject of
18  a loan?  Did you always have a half million loan on that
19  property?

20       MR. DYNOV:   No, because 200,000 went to his lawyer.
21  It is a good fee.  I'm sorry.  It is very good fee 200,000.
22  The rest where I built business for my daughter is in New
23  Jersey.  He take the business was managed.

24       MR. ASARO:   Your Honor, I am just confused for a
25  moment.  Could I just ask a couple of questions so we have

1  exactly what value there is, at least right now, securing the
2  bond.
3              THE COURT:  Sure.
4              MR. ASARO:  So, the property at 255 -- 2553 East
5  65th Street, that's the house that -- who lives at that house?
6              MR. DYNOV:  Me and my wife.
7              MR. ASARO:  That's not the one that's in
8  foreclosure; is that right?
9              MR. DYNOV:  That is in foreclosure.  I -- never I
10 don't know.  I never got letter for foreclosure, you know,
11 maybe it not but we owe like 25; 26,000.
12             MR. STERNHEIM:  Are you saying it is not in
13 foreclosure?
14             MR. DYNOV:  I don't have the papers. The bank never
15 send me the house papers but I know if you don't pay six
16 months it's supposed to go in foreclosure.
17             MR. ASARO:  All I know is the wife told me it was
18 in foreclosure.  Mr. Goldenberg is apparently paying the
19 bills.
20             MS. INESSSA DYNOV: He never paid.
21             MR. DYNOV:  All the mails he get the mails.  I
22 never got the one payment.  I don't know it foreclosure or no.
23 Understand me?  That's why --
24             MR. ASARO:  Can we at least sort through the
25 different properties first.

1            THE COURT:  Let's move on to 42 Mikky (ph) Court,
2   Morganville, New Jersey, whose property?
3            MR. STERNHEIM:  That is not secured.  It's not
4   listed.
5            THE COURT: It's not posted.
6            MR. ASARO:   204 East 27th Street.  That would be
7   the other property.
8            THE COURT:  Whose property is that?
9            MR. DYNOV: It's mine.
10           THE COURT:  What is the value of that?
11           MR. DYNOV:  It's about 850.  It states on the market
12   but the market went down.  I got offered 800,000.
13           THE COURT:  Have you sold it?
14           MR. DYNOV:   No, I can't remove the bail.
15           THE COURT:  Is there a mortgage on it?
16           MR. DYNOV:  One hundred sixty thousand.
17           THE COURT:  And do you know whether the payments
18   were up to date on that house?
19           MR. STERNHEIM:  Mrs. Dynov, she paid that.
20           MRS. INESSA DYNOV:  I pay this moment mortgage.
21           THE COURT:  So it is about $600,000 of equity there?
22           MR. ASARO:  I think maybe the next question, Judge,
23   is do the Dynovs want to allow their property to remain on
24   Mr. Goldenberg's bond for another minute.  If they want out,
25   right, though, I think he needs to go -- I think is their

1  choice. If they want him to remain out, get substitute
2  property, I think that is also their choice, that is up to
3  you.
4          MR. DYNOV: I have to sell one house  -- any house
5  to cover this 550,000 to get out from the mortgage. What I
6  can pay I just got my heart operation. I can't work -- go on
7  disability. He can't take care of this money, you know. I
8  have to sell any house is what I have to cover this mortgage.
9          THE COURT: Let me explain the situation to you in
10 very clear terms. If you want to withdraw your properties from
11 the bond, in other words, if you tell me you no longer want
12 these properties on the bond as of this moment there will be
13 no properties securing the defendant's bond and his return to
14 court, which may require the Court to, in the exercise of
15 prudence, to have the defendant placed in jail until either
16 he's sentenced or he comes up with different security. So if
17 you indicate to the Court you want to be removed from the bond
18 today, then I have to make a decision about what to do as to
19 his liberty. All right. If you are willing to give it a week
20 so Ms. Sternheim can try to find alternative security, then
21 your property would remain as the security for that one week,
22 at which point either Ms. Sternheim comes with the security
23 and substitutes it, or she doesn't, and we are in a position
24 where you would you withdraw your property if you decide to do
25 that next week, and then I have to decide what to do with

14

1  Mr. Goldenberg, whether to put him in jail until he's
2  sentenced, or if he comes up with security. Those are the
3  choices here. So you tell me, as you have the right to do,
4  that you want to withdraw the security now, then I will have
5  to make a decision about what to do about Mr. Goldenberg now,
6  or if you indicate that you are willing to wait the week, and
7  that's up to you, then I'll wait the week possibly, and we'll
8  see what happens at the end of the week, and see what I do,
9  but the government wants me to send him to jail now
10 irrespective.
11          MR. ASARO: That is our position, Judge.
12          THE COURT: But my concern is that -- several
13 concerns. One, that he appear whenever he's required to
14 appear, and also, that a sureter put his property or her
15 property in jeopardy if the sureter believes he's going to
16 leave and not appear the next time and I'm not in a position
17 to make that determination. You have to decide. It is your
18 property as to what you want to do with your property. So,
19 just tell me whether you want to withdraw the property now or
20 wait the week or something else, but I need to hear from you
21 about that at this point.
22          MR DYNOV: Let me ask a question. In the week I have
23 to come back here or is the decision can be without me?
24          THE COURT: Well, if you tell me that you are only
25 willing to wait the week.

```
 1            MR. DYNOV:  I have to.  I can wait the week but I
 2   have to be here in the court?
 3            THE COURT:  Either you or your wife has to come and
 4   tell me.
 5            MR. DYNOV:  Not one person.  Not two.
 6            MS. INESSA DYNOV:  I am leaving Monday.
 7            MR. DYNOV:  She was going to China.
 8            THE COURT:  You're going to China?  Well, what day
 9   can you come?
10            MR. DYNOV:  Like, give me two weeks.
11            THE COURT:  Give him two weeks.
12            MR. DYNOV:  Yes.
13            THE COURT:  It is probably more probable that
14   Ms. Sternhiem can arrange something in two weeks than one,
15   but understand, for those two weeks your property is still --
16            MR. DYNOV:  Under bail.
17            THE COURT:  Still on the bond.
18            MR. DYNOV:  One person can come?
19            THE COURT:  Just one person. You can come?
20            MR. DYNOV:  Yes.
21            THE COURT:  As long as you are on the property, you
22   can come.
23            MR. DYNOV: Yes.
24            THE COURT:  Do you agree, ma'am, that your husband
25   can represent you when he comes here since you both own the
```

```
 1  property?
 2              MS. INESSA DYNOV:  Yes.
 3              THE COURT:  You don't have any problem?
 4              MS. INESSA DYNOV:  With my husband?
 5              THE COURT:  At this point in your lives that's okay?
 6              MS. INESSA DYNOV:  Yes.
 7              THE COURT:  How long have you been married?
 8              MR. DYNOV: Long enough, 32.
 9              MS. INESSA DYNOV: Thirty-two.
10              THE COURT:  That's long enough.
11              MR. DYNOV:  I said so.
12              MR. STERNHEIM:  I just want to say I know it is the
13  Court's practice to put these types of matters on Friday, but
14  I am the CJA representative for the Southern District of New
15  York, and our conference is on Friday, I could not do it on
16  the 9th.
17              THE COURT:  Well, I could do it --
18              MR. DYNOV:  A week is enough.  If I can represent
19  myself, a week is enough because my house is going.
20              THE COURT:  I am going to make it the 2nd.  Let's
21  make it the 2ND.
22              MR. STERNHEIM: That is fine.
23              THE COURT: Friday February 2nd at?
24              MR. ASARO:  For me, the best thing would be first
25  thing in the morning, like, 9:15.
```

1            MR. STERNHEIM:  Can you make at that time, sir?

2            MR. DYNOV:  About ten I can make it.

3            MR. ASARO:  I could do ten.

4            THE COURT:  Ten o'clock.

5            MR. DYNOV:  Ten o'clock.

6            THE COURT:  Ten o'clock.

7            MR. DYNOV:   Thank you.

8            THE COURT:  I am going to adjourn this bail
9    revocation hearing to Friday February 2nd at ten o'clock.

10           MR. STERNHEIM:  Thank you.

11           THE DEFENDANT:  Thank you, Your Honor.

12           MR. STERNHEIM:  Have a good weekend.

13           THE DEFENDANT:  Have a good weekend.

14           THE COURT:  Thank you, sir.

15           Thank you, ma'am.

16           (Proceedings adjourned as above set forth)

17              *  *  *  *  *  *  *  *